IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AISHA J.[1] | : | |
|     *Plaintiff*, | : | CIVIL ACTION |
| v. | : | No. 24-2575 |
| | : | |
| FRANK BISIGNANO, | : | |
| **Commissioner of Social Security,** | : | |
|     *Defendant.* | : | |

MEMORANDUM OPINION

**HON. JOSÉ RAÚL ARTEAGA**　　　　　　　　　　　　　　　　　　September 5, 2025
**United States Magistrate Judge**[2]

    The Commissioner of the Social Security Administration, through an Administrative Law Judge ("ALJ"), determined that Aisha J. was not disabled and denied her application for Social Security Disability Insurance Benefits ("SSDI") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. She seeks judicial review of the determination, challenging the ALJ's consideration of her limitations in concentration, persistence, and pace and arguing that the ALJ improperly discredited the opinion of a treating physician and did not adequately support her decision. (*See* ECF 13.) The

---

    [1] Aisha J. is referred to solely by her first name and last initial in accordance with this Court's standing order. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited Aug. 14, 2025).

    [2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 11.)

1

Commissioner responds that the ALJ gave a valid explanation for her assessment of Aisha J.'s limitations and substantial evidence supports the denial of benefits. (*See* ECF 14.)

After careful review of the entire record, Aisha J.'s request for review is **DENIED** and the Commissioner's decision is **AFFIRMED.**

I.     **BACKGROUND**

Aisha J. is a high school graduate and earned a bachelor's degree. (Tr. 43, 159.) She has past relevant work experience as a climate liaison for a large school district and a case manager at a nonprofit provider of public health resources. (Tr. 45-46, 188.) She filed her application for SSDI on August 2, 2022, alleging disability beginning October 30, 2020. (Tr. 20.) After her claim was denied and denied again upon reconsideration, Aisha J. filed a written request for a hearing. (*Id*.) Represented by counsel, she testified at a telephonic hearing along with an impartial vocational expert ("VE"). (Tr. 20, 35, 38, 61-64.)

In the ALJ's decision rendered after the hearing, she found that Aisha J. had the following severe impairments through March 31, 2021, her date last insured: COVID-19, headaches, palpitations, obesity, and anxiety. (Tr. 22.) The ALJ also found that none of Aisha J.'s impairments, including any mental impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 23.)

More specifically, considering whether Aisha J. had a mental impairment that satisfied the Paragraph B criteria, the ALJ found that Aisha J. had only "moderate limitations" in her ability to concentrate, persist, or maintain pace. (Tr. 24.) The ALJ

considered Aisha J.'s contention that she had limitations in concentrating and following written instructions but found that "the record fail[ed] to show any mention of distractibility" and cited Aisha J.'s testimony that she was "able to drive, follow spoken instructions, prepare meals, and manage funds." (*Id*.) The ALJ also found that Aisha J. had only "moderate limitations" with respect to understanding, remembering, or applying information . . . ." (Tr. 23.) The ALJ considered Aisha J's allegation that "she has difficulty remembering generally and taking medications without reminders but explained that the record made "no mention of any issues with [Aisha J.'s] short- or long-term memory," and cited Aisha J.'s testimony "that she could prepare meals, follow spoken instructions, pay bills, shop, and drive." (Tr. 23-24.) As a result, the ALJ considered that Aisha J. could "understand, remember, and carry out simple instructions" when making her residual functional capacity[3] ("RFC") determination. (Tr. 25.)

In formulating Aisha J.'s RFC, the ALJ also considered an opinion from her treating physician Dat Tran, D.O., which "was offered two years *after* the date last insured expired." (Tr. 27 (emphasis added).) According to the ALJ, Dr. Tran opined that Aisha J. "would require two thirty-minute unscheduled breaks per workday and would be absent four or more days per month." (*Id.* (citing Tr. 859).) Dr. Tran delivered his May

---

[3] "Residual functional capacity" is the most a clamant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (*e.g.* pain). 20 C.F.R. §§ 404.1545(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* §§ 404.1545(a)(2).

22, 2023 opinion on a two-page "Medical Source Statement of Ability to Do Work Related Activities" form which included eleven questions, of which nine required check-box responses with limited or no space provided for additional details. (Tr. 859.) Dr. Tran wrote that Aisha J.'s symptoms included "fatigue, disequilibrium, anxiety, vertigo" and her diagnoses included "Long COVID Syndrome, palpitations, [and] pericarditis," but provided minimal further information with respect to his observations. (Tr. 858-59.) Describing the "objective findings, clinical observations, and symptomatology supporting [his] assessment" he wrote: "Follows with Einstein Cardiology, has symptomatic extra heart beats on monitor that did improve with medication. Had pericarditis requiring hospitalization and pericardiocentesis in Sept[ember] 2022." (Tr. 859.) He described her responses to treatment this way: "Beta blocker therapy for long COVID syndrome and palpitation can cause grogginess." (*Id*.) The form concluded with the following statement:

> Please be advised that this form was generated at Pond Lehocky Disability and sent to the Claimant's treatment provider for review, completion and signature. Pond Lehocky Disability does not provide any specific instruction to the treatment provider with regard to the completion of the form other than a request to our office prior to the completion of the questionnaire should a fee be required.

(*Id*.) Weighing Dr. Tran's opinion, the ALJ wrote that it was "not consistent with the evidence as a whole," explaining that although Aisha J. "complained of headaches, fatigue, increased palpitations, and lightheadedness after having COVID-19, objective testing and exam findings were grossly normal." (Tr. 27 (citing Tr. 35-66, 337-478, 809-56).) The ALJ found that the opinion was "not persuasive." (Tr. 27.)

4

During the hearing, the ALJ asked the VE to consider the availability of jobs in the national economy for hypothetical individuals who would be capable of either medium or light exertional work who "should avoid concentrated exposure to loud noise . . . and vibration, as well as hazards, such as machinery and heights" and who could "understand, remember, and carry out simple instructions." (Tr. 62-63.) The ALJ also asked whether there would be "a point that being off task is work preclusive" and the VE responded, "Yes, if it[']s 15% or greater." (Tr. 64.) The VE testified that occupations such as linen clerk, dietary aide, and store laborer were all available to such hypothetical individuals. (Tr. 63-64.) Aisha J.'s attorney did not ask any additional questions. (Tr. 65.)

The ALJ ultimately determined that Aisha J. could understand, remember, and carry out simple instructions and had the RFC to perform medium work, except that she must "avoid concentrated exposure to loud noise . . . , vibration, and hazards such as machinery and heights." (Tr. 25.) The ALJ explained that her RFC assessment "reflect[ed] the degree of limitation [she] found in the 'paragraph B' mental function analysis." (*Id.*) The ALJ also explained that she had "carefully considered" Aisha J.'s non-severe impairments," including her mental impairments, in assessing Aisha J.'s RFC. (Tr. 27.) The ALJ agreed with the VE that Aisha J. would not be able to perform any of her past relevant work as a social service aide or residential counselor. (Tr. 27-28; *see* Tr. 62-63.) However, the ALJ found that Aisha J. would be "capable of making a successful adjustment to other work that existed in significant numbers in the national economy."

(Tr. 29.)  As a result, the ALJ determined that Aisha J. was "not disabled" and denied her application for SSDI.  (*Id.*)

Aisha J. filed a request for review, which the Appeals Council denied.  (Tr. 1-6.)  She then filed this action seeking review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.    LEGAL STANDARDS

The Social Security Act requires an ALJ to state the "reason or reasons upon which [a denial of benefits] is based."  42 U.S.C. § 405(b)(1).  An ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors.  *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). "The statute requires [ALJs] to explain only the dispositive reasons for their decisions, not everything else that they considered."  *Id.*  The Court defers to the ALJ's assessment of the evidence so long as the ALJ "specifically identif[ies] and explain[s] what evidence he [or she] found not credible and why."  *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014).  The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)).  The Court may read the ALJ's decision "as a whole" to determine whether the record was sufficiently developed.  *Id.*

To determine whether a claimant is disabled under the Social Security Act, the Commissioner, through an ALJ, follows a five-step sequential evaluation process.  20 C.F.R. § 404.1520(a)(4)(i)-(v).  The ALJ considers whether the claimant: (1) is engaged

6

in substantial gainful activity; (2) has a severe impairment; (3) has impairment(s) that meet or medically equal a listed impairment[4]; (4) has the capacity to do past relevant work, considering her RFC; and (5) is able to do any other work, considering her RFC, age, education, and work experience. *Id.* It is the claimant's burden of proof to establish steps one through four. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). At step five, the burden of proof shifts to the Commissioner to prove "the existence of jobs in the national economy that an individual with the claimant's impairments is capable of performing." *Zirnsak*, 777 F.3d at 616.

Where mental impairments are under consideration, the ALJ's evaluation includes additional inquiries. 20 C.F.R. § 404.1520a(a); *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019). At step two, the ALJ must use the Psychiatric Review Technique ("PRT") to determine whether the claimant has any "medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1); *see also Rebecca L. v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 268 (D.N.J. 2022) ("When there is evidence of a mental impairment that allegedly prevents a disability claimant from working, the Commissioner is required to evaluate the claimant's mental impairments by use of a PRT."). The PRT requires the ALJ to assess the claimant's limitations and restrictions from certain mental impairments. 20 C.F.R. § 404.1520a; *see also* SSR 96-8P, 1996 WL 374184 (July 2, 1996). The ALJ "rate[s] the degree of functional limitation resulting from the impairment(s)" to determine their

---

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, App'x 1.

7

severity. 20 C.F.R. §§ 404.1520a(b)(2) and (d). The ALJ uses "four broad functional areas"—the "paragraph B" criteria—to assess the claimant's ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* §§ 404.1520a(c)(3)-(4). The degree of limitation is rated on a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). "If a claimant's mental health impairments are not presumed to constitute a disability at step three, any mental impairments assessed in the PRT must be incorporated into the RFC at step four because the RFC must include all 'credibly established limitations[.]'" *Kitchen v. O'Malley*, No. 23-484, 2024 WL 3510868, at *7 (D. Del. July 23, 2024) (quoting *Sudler v. Comm'r of Soc. Sec.*, 827 F. App'x 241, 245 (3d Cir. 2020)).

Under the applicable regulations for claims—like Aisha J.'s—filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). ALJs must "articulate how [they] considered the medical opinions" and "how persuasive [they] find[ ] all of" them. *Id*. §§ 404.1520c(a) and (b)(1). When evaluating the persuasiveness of medical opinions and prior administrative findings, supportability and consistency are "the most important factors" for the ALJ to consider. *Id.* § 404.1520c(a). A written explanation of how the ALJ "considered the supportability and consistency factors" with respect to a medical opinion is required. *Id*. § 404.1520c(b)(2). However, the ALJ "need not reiterate the magic words 'support' and 'consistent' for each" medical opinion they consider in reaching a determination. *Zaborowski*, 115 F.4th at 639. "[S]upportability

8

relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Nolf v. Comm'r of Soc. Sec.*, No. 22-368, 2023 WL 8437872, at *1 (W.D. Pa. Dec. 4, 2023) (citation and internal quotation omitted).

When substantial evidence supports the ALJ's factual findings, the Court is bound by them, even if it would have decided the factual inquiry differently. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. 97 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). It "does not mean a large or considerable amount of evidence . . . ." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek,* 587 U.S. at 103. No more is required to affirm the Commissioner's finding. *Id.* at 97.

Courts must not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). The Court may "not substitute [its] own judgment for that of the fact finder." *Zirnsak*, 777 F.3d at 611. "[T]he ALJ is entitled to weigh all evidence . . . ." *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011). Record evidence "that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for" it.

9

*Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009). The Court "must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Ming Dai,* 593 U.S. 357, 369 (2021) (citation and internal quotation omitted).

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the" Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Ultimately, Aisha J. bears the burden to explain how any "error to which she points could have made any difference" in the ALJ's determination. *Shinseki v. Sanders*, 556 U.S. 396, 409, 413 (2009).

## III.   DISCUSSION

The question here is not whether Aisha J. is disabled. Rather, the Court must determine whether substantial evidence supports the Commissioner's finding that she was not and whether the Commissioner, through the ALJ correctly applied the relevant law. *See* 42 U.S.C. § 405(g). Mindful of the threshold for substantial evidence—"only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" a review of the record demonstrates that substantial evidence supports the Commissioner's disability determination. *Biestek*, 587 U.S. at 103.

### A. The ALJ Properly Accounted for Aisha J.'s Mental Limitations in Determining her RFC.

Aisha J. argues that judgment in her favor or remand is required because the ALJ's RFC determination does not "adequately account for [her] moderate limitation in concentration, persistence, and pace." (ECF 13 at ECF p. 13.) She maintains that "the ALJ's limitation to simple instructions" is "flawed because it is not the result of "a detailed assessment," and is inconsistent with the PRT's findings. (*Id.*) Aisha J. complains that "no medical source opined that she is limited to simple instructions" and "no valid explanation" was given for how that restriction accounts for her moderate limitations in concentration, persistence, and pace. (*Id.* at ECF p. 14-15.). She also contends that the ALJ erred because "the hypotheticals posed to the VE were not indicative of [her] maximum RFC." (*Id.* at ECF p. 15.) The Commissioner responds that Aisha J. does not point to "a single doctor note, physical or mental observation, medical treatment, or daily activity" that would "undermine[ ] the ALJ's conclusion regarding [Aisha J.'s] ability to understand, remember, and carry out simple instructions." (ECF 14 at ECF p. 9.) He argues that, in fact, substantial evidence supports the ALJ's evaluation of Aisha J.'s mental RFC. (*Id.* at ECF p. 10.) A review of the record demonstrates that the ALJ properly accounted for Aisha J.'s mental limitations.

To the extent that Aisha J. faults the ALJ's determination because no medical source explicitly "opined that she is limited to simple instructions" (ECF 13 at ECF p. 15), her citation to *Long v. Kijakazi*, No. 20-6336, 2022 WL 1204131, at *5 (E.D. Pa. Apr. 22, 2022), is inapposite. *Long* explained that the Commissioner is responsible for determining

11

whether a claimant meets "the statutory definition of disability" and made clear that a medical source's statement that a claimant is "'disabled' or 'unable to work'" does not suffice to support a determination that the claimant is "disabled." 2022 WL 1204131, at *5 (quoting 20 C.F.R. § 404.1527(d)(1)). Aisha J. points to no authority for the proposition that a medical opinion must explicitly call for a "simple instructions" limitation before an ALJ can use such a limitation in formulating an RFC. Rather, she argues that "[t]he Third Circuit has refused to uphold an ALJ's ruling where," like in her case, "a claimant had moderate deficiencies in concentration, persistence, or pace, and the ALJ limited the claimant to simple and routine and/or low stress work." (ECF 13 at ECF p. 13-14.) In support of her argument, she cites cases with results that "stem[ ] from the Third Circuit's decision in *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004)." (*See id.*) However, *Ramirez* predates the Third Circuit's binding 2019 decision in *Hess*[5] where it explained that "*Ramirez* did *not* hold that there is any categorial prohibition against using a 'simple tasks' limitation" once an ALJ has found that a claimant has limitations in concentration, persistence, or pace. *Hess*, 931 F.3d at 212 (emphasis added).

---

[5] Aisha J. cites no decisions in her initial brief to support this argument (or otherwise) that were decided *after Hess*. (*See* ECF 13 at ECF p. 3, 12-15.) Her attorneys are reminded of their duty to disclose adverse authority to the Court under Rule 3.3(a)(2) of the Pennsylvania Rules of Professional Conduct, which includes an obligation to provide the Court with case citations that are up to date in light of ever-evolving law. *See* Pa. R.P.C. 3.3(a)(2) (Candor Toward the Tribunal). *Cf. Lowenschuss v. W. Pub. Co.*, 542 F.2d 180, 185 (3d Cir. 1976) ("That segment of the public engaged in the practice of law necessarily must remain abreast of decisions which subtly shape the contours and the body of the evolving law.").

*Hess* held that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three." *Id.* at 209. A claimant's PRT results "do not require the use of any particular language" in the RFC if the findings are "adequately conveyed." *Id.* at 209-210. In other words, "as long as the ALJ offers a valid explanation, a simple tasks limitation is permitted after a finding that a claimant has moderate difficulties in concentration, persistence, or pace." *Id.* at 211 (citation modified). Whether an ALJ has provided the required valid explanation turns on each case's facts. *Id.* at 211. An ALJ may appropriately rely on "mental status examinations and reports" that show that a claimant "could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living . . . ." *Id.* at 214.

Aisha J. is "willing to acknowledge" *Hess's* binding holding "that a restriction to simple tasks and decisions may account for moderate limitations in persistence, concentration and maintaining pace," but argues that her case is "distinguishable." (ECF 13 at ECF p. 15.) It is not. Here, like in *Hess*, the ALJ relied on objective mental status examinations, medical reports, and Aisha J.'s own reported activities to provide a valid explanation for her determination that Aisha J. had only moderate limitations in concentration, persistence, and pace and the RFC to perform medium work with limited non-exertional limitations. Referencing treatment notes from Philmont Guidance Center in August 2020, the ALJ noted that Aisha J. reported she was "'doing ok' mostly" with "not depressed mood." (Tr. 26, 502.) From October 2020, the ALJ pointed to multiple exams showing that Aisha J. was "cooperative" and "goal oriented" in addition to having

13

normal speech and thought content. (Tr. 26, 500.) Two months later, Aisha J. again reported that she was "doing ok" and "not depressed." (Tr. 26, 498.) February 2021 treatment notes showed that Aisha J. was "oriented," "cooperative," and "goal oriented" with normal speech, thought content, and motor behavior. (Tr. 26, 496.) The ALJ noted that Aisha J.'s records also reflect that she felt better with over-the-counter medication. (Tr. 26, 363, 496.) The ALJ observed that there is no mention of distractibility in the record. (Tr. 24.) The ALJ also cited a November 2020 medical report from Abington Family Medicine showing that Aisha J. had fluctuating energy but was able to go to the store. (Tr. 26, 363.) A February 2021 medical report from Einstein Cardiology showed that she denied anxiety. (Tr. 26, 842.) In the same month, Aisha J. reported to Philmont Guidance Center that she was experiencing anxiety. (Tr. 26, 496.) However, as the ALJ noted, she reported that her anxiety felt better with Xanax. (*Id.*) The ALJ also discussed Aisha J.'s daily activities, explaining that she was able to shop, drive, manage her personal care and finances, and attend church, parties, and family vacations. (Tr. 27.) After reviewing all the evidence, the ALJ recognized that Aisha J.'s mental status exams, like her other medical exam findings, were "grossly normal." (Tr. 27; *see* Tr. 480-519.)

The ALJ sufficiently accounted for the PRT's findings when explaining her determination of Aisha J.'s RFC by considering all limitations credibly established by the record. *See Bonner v. Saul*, No. 19-1370, 2020 WL 4041052, at *15 (M.D. Pa. July 17, 2020) (finding substantial evidence supported the ALJ's RFC for, among other limitations, work involving only simple tasks where the record reflected, *inter alia*, "relatively normal mental status findings, including that [the claimant] exhibited coherent thought

processes, a normal attitude and affect, good insight, normal thought content, intact recent and remote memory, and intact cognitive functioning" and where, "despite alleging disabling symptoms stemming from her physical and mental impairments, [the claimant] described her daily activities in terms that were not wholly disabling"). The ALJ's analysis is supported by "such relevant evidence as a reasonable mind might accept as adequate to support" her determination. *Biestek*, 587 U.S. at 103. Notably, Aisha J. points to no record evidence that would even suggest that the ALJ's analysis of her mental limitations was deficient. The ALJ's explanation was valid. *See Thorpe v. Kijakazi*, No. 223995, 2023 WL 5152306, at *15 (E.D. Pa. Aug. 10, 2023) ("Here, the ALJ similarly provided a valid explanation for concluding that Plaintiff could perform simple tasks, highlighting many of the same types of evidence highlighted in Hess."); *Weaver v. Saul*, No. 18-3296, 2019 WL 4220927, at *1, n.1 (E.D. Pa. Sept. 5, 2019) (applying *Hess* and finding that, because the ALJ provided a valid explanation evaluating the record evidence, an unskilled work limitation sufficed to account for a moderate limitation in concentration, persistence, or pace).

Moreover, because substantial evidence supports the ALJ's RFC determination, the ALJ did not fail to include credibly established limitations in the hypotheticals that she presented to the VE. Aisha J.'s "objections to the adequacy of hypothetical questions posed to" the VE "boil down to attacks on the RFC assessment itself . . . ." *Rutherford*, 399 F.3d at 552, 554 n.8. She complains that "the hypotheticals . . . were not indicative of [her] maximum RFC . . . ." (ECF 13 at ECF p. 15.) However, an ALJ has discretion to choose whether to submit to the VE a limitation that is supported by some record evidence but

15

is controverted by other evidence. *Rutherford*, 399 F.3d at 554. The Third Circuit does "not require an ALJ to submit . . . every impairment *alleged* by a claimant." *Id.* (emphasis added). Under the deferential standard of review that applies to appeals of Social Security disability determinations, this argument does not invalidate the Commissioner's determination.

### B. Substantial Evidence Supports the ALJ's Evaluation of Dr. Tran's Opinion.

Aisha J. argues that substantial evidence does not support the ALJ's determination because the ALJ improperly rejected Dr. Tran's opinion and "did not specify any evidence contradicting" it. (ECF 13 at ECF p. 15.) She contends that since the ALJ deemed Dr. Tran's opinion not persuasive, and because there are no record opinions from state agency medical consultants, the ALJ had a duty to develop the record by consulting with a medical professional and erred by failing to do so. (*Id.* at ECF p. 17-18.) Aisha J. asserts that long COVID is "still relatively new and being learned about in the medical community," so it was "inappropriate for the ALJ to interpret the medical record and [Aisha J.'s] subjective complaints without input from a medical expert." (*Id.* at ECF p. 18.) The Commissioner responds that the ALJ "reasonably concluded that Dr. Tran's opinion was unpersuasive" and "properly acted in her fact-finding capacity" when she disagreed with Dr. Tran's opinion, which was drafted "two years after the expiration of the date last insured." (ECF 14 at ECF p. 13-17.) Upon review of the record, substantial evidence supports the ALJ's decision to discredit Dr. Tran's opinion and there is substantial evidence to support the ALJ's RFC determination.

16

The ALJ acknowledged that Dr. Tran was Aisha J.'s physician. (Tr. 27.) However, under the applicable regulations[6], an ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's own] medical sources." 20 CFR § 404.1520c(a). Even if Dr. Tran was Aisha J.'s treating physician during the relevant time, such a relationship would not require the ALJ to give his opinion controlling weight. Moreover, the record does not include, and Aisha J. does not identify, any treatment records or other evidence to show that Dr. Tran treated Aisha J. prior to her date last insured. She argues only that Dr. Tran "has been treating [her] for a condition that occurred prior to her date last insured, for which she had objective findings and treatment . . . ." (ECF 13 at ECF p. 16.) It is Aisha J's burden to establish that she "became disabled at some point between the onset date of disability and the date that [her] insured status expired." *Zirnsak*, 777 F.3d at 612. While evidence generated after the date last insured may "shed light on [her] condition during the insured period," such evidence does not compel the ALJ to conclude that Dr. Tran's opinion rendered after the insured period was persuasive. *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 688 (3d Cir. 2020); *see Zirnsak*, 777 F.3d at 614 (affirming that an ALJ did not err in giving little weight to a claimant's mental health assessment that was conducted over two years after date last insured). *Cf. Cardinal v. Colvin*, No. 14-1368, 2016 WL 1237783, at *5 (E.D. Pa. Mar. 30,

---

[6] Here too, Aisha J. relies on outdated authority. Every case that she cites in support of her argument was decided before the regulations that govern her claim came into effect. (*See* ECF 13 at ECF p. 3, 17-19.)

2016) (holding "the ALJ need only consider medical records prior to the date of last insured"). To the extent that the ALJ afforded less persuasive value to Dr. Tran's opinion because it was prepared two years after the end of the relevant period, she did not err.

Moreover, this was not the only reason the ALJ gave for discounting Dr. Tran's opinion.[7] The ALJ considered other evidence from the record including treatment notes, objective testing results, observations from Aisha J.'s cardiologist, and Aisha J.'s own testimony to make her RFC determination. (Tr. 25-27.) The ALJ explained that records from visits to Philmont Guidance Center, Einstein Cardiology, and Abington Family Medicine from August and October of 2020 and January and February of 2021 all showed largely normal testing and exam findings. (Tr. 26-27.) Treatment notes showed that Aisha J. was "cooperative" and "goal oriented" with normal speech, thought content, and motor behavior. (Tr. 496.) Cardiology tests showed a negative echocardiogram, stress test, and electrocardiogram. (Tr. 379.) Aisha J. herself reported that she felt better with over-the-counter medication and that her symptoms were "unpredictable." (Tr. 27, 53.) She reported, and the ALJ acknowledged, that her hobbies and interests include "going

---

[7] The only record evidence of any interaction between Aisha J. and Dr. Tran is the brief form that he completed for Pond Lehocky, and it is this form that Aisha J. relies on to make her argument that his opinion should have been given more credit. "A treating physician's medical opinion cannot be discounted by an ALJ based on the naked fact that it was provided in a check-box form." *Chung v. Comm'r Soc. Sec.*, No. 24-1974, 2025 WL 1065241, at *3 (3d Cir. Apr. 9, 2025) (citing *Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022)). However, forms where a physician's only obligation is to "check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). The ALJ did not state that she discounted Dr. Tran's opinion just because it was provided in check-box form. Ultimately, she discredited his opinion because it did not align with objective testing and other record evidence. (Tr. 27.)

out, shopping, dinners, parties, religious events, kids['] activities, [and] family events." (Tr. 184; *see also* Tr. 27.) The ALJ noted Aisha J.'s own reports "that over-the-counter medication helped her headaches" and explained that her reported "poor energy was not consistent." (Tr. 26-27, 337-478, 809-56.) The ALJ found that Dr. Tran's opinion was not in alignment with "grossly normal exam findings and conservative treatment." (Tr. 27.) She reasonably concluded that his opinion was "not consistent with the evidence as a whole." (*Id.*)

No state agency medical consultants conducted evaluations in this case, so Dr. Tran's is the only formal medical opinion in the record. (Tr. 25, 67-78.) Aisha J. contends that the ALJ could not have appropriately formulated her RFC without a physician's assessment of her functional abilities. (*See* ECF 13 at ECF p. 17.) Aisha J. is incorrect. "[T]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361; *see also* 20 C.F.R. §§ 404.1527(e), 404.1546(c). "Although reliance on State consultants' and treating physicians' opinions is common . . . the regulations do not require ALJs to seek outside expert assistance." *Chandler*, 667 F.3d at 362. Aisha J. has not shown that the record was so deficient in the absence of Dr. Tran's opinion that the ALJ was not able to appropriately assess her RFC. Moreover, while an ALJ has a duty to develop a full and fair record, *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995), it was Aisha J.'s burden "to develop the record regarding [ ] her disability because [she] is in a better position to provide information about [ ] her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citations omitted). A claimant like Aisha J. who was "represented

19

by counsel is presumed to have made [her] best case before the ALJ . . . ." *Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 158 (3d Cir. 2008) (citing *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007)); *see also Myers v. Berryhill*, 373 F. Supp. 3d 528, 539 (M.D. Pa. 2019). The ALJ was not precluded from reaching an RFC determination without further medical opinion evidence than the information that was available to her in the administrative proceeding. Because there is substantial record evidence—again, not necessarily a "large or considerable amount of evidence"—to support the ALJ's findings, the Commissioner's determination stands. *Pierce*, 487 U.S. at 565.

## IV.   CONCLUSION

Upon review, the ALJ's decision and the underlying record show that her evaluation of Aisha J. was supported by "such evidence as a reasonable mind might accept as adequate to support" her determination. *Biestek,* 597 U.S. at 103.  Keeping in mind that the threshold for "evidentiary sufficiency is not high," *id.*, and for the reasons stated above, Aisha J.'s request for review is **DENIED** and the Commissioner's final decision is **AFFIRMED.**

An appropriate Order follows.